THE PEOPLE EX REL. EUGENE E. DOUVIELLE, JUDGE OF PROBATE v. THE BOARD OF SUPERVISORS OF MANISTEE COUNTY.

*Boards of supervisors cannot regulate judicial salaries.*

The schedule to the constitution was meant to provide for temporary purposes only, and its provisions cannot be given permanent effect where any other interpretation is reasonable.

Probate judges are not county but State officers, and are not subject to the control of any authority inferior to the Legislature.

Power delegated to an agent to "fix and determine" a matter over which he has no original power outside of the agency, is expended when he has once acted.

A board of supervisors cannot, under the constitution, control the salaries of probate judges, either on its own behalf or generally; it has at most the delegated, but questionable power of fixing the salary once, and cannot change it, if at all, until directed to do so by the Legislature.

An official salary may be deemed to bind the parties paying and receiving it if no other compensation is provided by law, and the officer accepts it as fixed and goes into office on those terms; but this presumption does not arise where the salary has been cut down after the officer's election.

MANDAMUS.    Submitted April 10.    Granted April 22.

*Morris & Nelson* and *Cowles & Cahill* for relator.  The

regulation of the salaries of judges of probate and other county officers constitutionally belongs to the Legislature, *Kennedy v. Gies*, 25 Mich., 90; Mich. Const., schedule, § 20; there is a distinction between officers whose duties concern the State at large and merely municipal officers, Dillon Mun. Corp., 77; *People v. Hurlbut*, 24 Mich., 79; the Legislature has repeatedly regulated the power of the board of supervisors to fix the salaries of judges of probate, 1 Sess. L., 1871, p. 217; 1 Sess. L., 1873, p. 496; 2 Comp. L., § 5644; the schedule to a constitution may contain provisions of permanent force, *Stewart v. Crosby*, 15 Tex., 546; Mich. Const., schedule, §§ 1, 2, 3, 4, 11, 15, 24, 25, 28.

*L. E. Morris* and *Wheeler & Bishop* for respondents.

CAMPBELL, C. J. Relator was elected judge of probate of Manistee county in November, 1876, and his official term of four years began January 1, 1877. The board of supervisors in October, 1875, fixed the salary of the office at five hundred dollars. On the 18th of April, 1877, they reduced it to four hundred dollars, and in October, 1878, to three hundred dollars. A mandamus is sought to compel them to allow him five hundred dollars, as originally fixed before he was elected. Respondents admit the facts, and claim they have control over the subject.

Before considering the sufficiency of the showing it may be well to examine into the course of legislation on this subject.

From the organization of the State under its first constitution until 1859, the compensation of judges of probate was determined by the Legislature, and was made up of fees for their services paid by parties and estates. In 1859 the Legislature by statute (Sess. L. 1859, p. 518), provided that all judges of probate elected in and after 1860, should be paid by a salary out of the county treasury, to be "fixed and determined" by the

county auditors in Wayne county, and the supervisors in other counties, at not more than eight nor less than five cents for each inhabitant of the county according to each State or United States census, but in no case to be less than one hundred nor more than twenty-five hundred dollars. A percentage was required to be collected from each estate and paid into the county treasury, and fees were abolished after December 31, 1860. This charge has been varied since.

In 1861 the Legislature authorized a register of probate to be appointed by the judge of probate of Wayne county, and fixed his salary at five hundred dollars, payable out of the county treasury.

In 1863 it was provided that the salary of the judge should be "fixed and determined" by the supervisors (or county auditors in Wayne county) at not less than one hundred nor more than fifteen hundred dollars, except that in Wayne it might be not more than twenty-five hundred dollars. But this act was not to affect the salaries of judges then in office. Sess. L. 1863, pp. 121, 122.

In 1865 certain county boards of supervisors were allowed to fix salaries without reference to the limitation in the law of 1863. Sess. L. 1865, p. 637.

Provision has been made for probate clerks and registers and their compensation within certain limits in several cases, general and special. Sess. L. 1865, p. 580; 1 Sess. L. 1867, p. 206; 1 Sess. L. 1869, p. 144; 1 Sess. L. 1873, p. 188; Pub. Acts 1875, pp. 151, 198; Pub. Acts 1877, p. 145.

In 1873 there were two changes,—one (p. 496) allowing beyond salary, to judges, fees for copies and certificates, and the other (p. 188) allowing supervisors of all counties but Wayne to fix salaries not to exceed fifteen hundred dollars, and in Wayne fixing the amount absolutely at two thousand seven hundred and fifty dollars. This last law declares that "said salary shall be fixed," etc., and contains no other qualification beyond the amount of limitation. This was the law in force when the action was had in Manistee.

The first ground taken by the relator that the schedule to the constitution fixes the rights of the judges not to have their salaries changed (schedule, § 20) is, we think, untenable.  The schedule was intended to provide for temporary and not for future and permanent purposes; and cannot be given a permanent operation in any case where any other interpretation is reasonable.

But the main ground of complaint is that the supervisors can have no inherent power over the subject, and that they have exceeded any valid authority conferred upon them by the Legislature.

It is very clear to us that the duties performed by probate judges are in no sense services performed for their respective counties, and that they are in no sense county officers.  They exercise a portion of the judicial and prerogative power of the State, and cannot be subjected to the direction of any body inferior to the Legislature.  It is very plain that if their salaries can be put under the complete control of any local body, and be changed in its discretion, it will be an unlawful abdication of the power of the State, which cannot be upheld on any principle.  The Legislature is the only body having charge of the State interests.  It cannot be liable to the local passions and prejudices which may and often do produce confusion in local affairs, and which, if allowed free action, may destroy the independence and break up the business of one of the most important branches of our judicial system.

It is easy to see that in dealing with this subject of probate compensation the statutes have always gone upon the theory that the supervisors have no original power over the subject; and most, if not all of the legislation, properly construed, has shown a desire on the part of the Legislature to prevent just such action as was had in this case.  So long as fees were fixed, there was no action possible by the supervisors.  The statute of 1859, while it gave some discretionary power, carefully limited it. so as to compel salaries to be fixed with some regard to population, and fixed not only a

maximum and minimum salary, but also a sum for each inhabitant on a small sliding scale of practical equality. The changes of 1863 were not to affect existing incumbents, and did not allow action once taken to be changed. A power delegated to an agent to "fix and determine" a matter in which he has no power of his own outside of the agency, is expended when he has once acted. The special law of 1865 in like manner allowed action once for all. The law of 1873 is still more significant, because, while it authorizes the supervisors to fix salaries in other counties, itself fixes the salary of the judge of Wayne county, so that it cannot be changed without further legislation. It would be a forced construction to hold that the term "fix" could mean change, as it must mean that, if any such power exists as was exercised in Manistee.

The distinction between those charges against counties which boards of supervisors may control, because for services rendered to the county, and those which the State may compel them to pay as a fair apportionment of burdens for services rendered to the State, was pointed out and fully discussed in *The People v. Board of Auditors of Wayne County*, 13 Mich., 233. In that case the salary of the clerk of the Detroit police court was held lawfully charged on the county of Wayne, and beyond the control of the board of auditors. The nature of judicial business as public and not local was explained, and the impropriety and illegality of allowing it to be subjected to the control of any local authority was referred to. We need not, therefore, repeat what was there intimated. We have no hesitation in saying that under our constitution the board of supervisors do not possess, and cannot be allowed to exercise, any control on their own behalf, or any general control at all over these salaries. If they can do anything in the matter, it is only to exercise the delegated power of acting once until directed by the legislature to act again. Whether even this power can be granted is a very serious question which

is not very important in this case, or probably in most cases now existing, because the judges may undoubtedly, if they choose, accept the salaries fixed, and having gone into office on those terms, and no other compensation being provided by law, both parties may be deemed to have bound themselves. But no such inference can arise when a change is made decreasing a salary after a judge has once been elected. The power to delegate any authority whatever to fix these salaries is open to so much question that it is very fortunate that the matter can be considered by the Legislature before any further complications arise.

We think relator is entitled to the salary fixed before his election. A mandamus must issue according to the prayer of his petition.

The other Justices concurred.

---

Afterwards, at the June term, 1879, the board of supervisors moved for a modification of the order of the court, and showed that the salary of the office of judge of probate in Manistee county had been originally fixed at $300 under the power delegated by the Legislature, but had been raised to $500 before the election of relator. The motion was submitted June 10, and decided June 11.

*E. E. Benedict* for the motion.

*N. W. Nelson* against.

THE COURT stated that it had been shown that the answer of the board of supervisors to the order to show cause why they should not allow the relator the full amount of salary which he claimed, contained a serious mistake of fact by which it was left to be understood that the salary was originally fixed at $500; but that this mistake ought not to preclude the showing now made, especially as the writ of mandamus had not yet issued. They accordingly granted an order staying the issue of the writ.