## MOONEY v. UNEMPLOYMENT COMPENSATION COMMISSION.

1. COURTS—SUPERIOR COURT OF GRAND RAPIDS—JURISDICTION—WRITS —PROCESS.

   Provision of statute, creating the superior court of Grand Rapids, which authorized that court "to issue all writs and process, and to do all acts which the circuit courts of this State, within their respective jurisdictions, may in like cases issue and do" must be construed as having reference to the jurisdiction expressly granted to the superior court (CL 1948, § 727.13).

2. SAME—SUPERIOR COURT OF GRAND RAPIDS—JURISDICTION.

   The superior court of Grand Rapids was not invested with all the the powers and functions of a circuit court within the territorial limits of its jurisdiction nor was it a division of the territorial limits of the circuit court of Kent county in which the city is located (CL 1948, § 727.13).

3. CONSTITUTIONAL LAW—CIRCUIT COURTS—GENERAL POWERS.

   The legislature has the right only to determine what causes may be instituted in the circuit courts but has no control over the general powers of those courts (Const 1908, art 7, § 10).

4. COURTS—MUNICIPAL COURTS.

   Municipal courts are not created by the Constitution, but only authorized and permitted.

5. SAME—JURISDICTION—LEGISLATURE.

   Municipal courts derive all of their powers from the legislature and it may give them large or limited powers.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–7, 11, 12]  14 Am Jur, Courts §§ 17, 21.
[7–9, 11, 12]  48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 46–50.
[7–9, 11, 12]  Exhaustion of administrative remedies as prerequisite to declaratory relief in respect to unemployment compensation. 14 ALR2d 838.
[10]  50 Am Jur, Statutes §§ 354, 355.
[13]  14 Am Jur, Costs § 91.

6. SAME—MUNICIPAL COURTS—LEGISLATURE.

The legislature must determine the extent of the authority to be given the municipal courts, subject to the restriction that it must not exceed that which can properly pertain to a municipal court.

7. SAME—SUPERIOR COURT OF GRAND RAPIDS—JURISDICTION—UNEMPLOYMENT COMPENSATION—STATUTES—SUPREME COURT.

The superior court of Grand Rapids, professedly organized as a municipal court, has no jurisdiction to review action by the appeal board of the unemployment compensation commission, an administrative body, in the absence of specific statutory authority so to do, in view of the express provisions as to jurisdiction in act creating such court and the limited review of the commission's action permitted by the act creating that commission; nor may the Supreme Court review such action by direct review (CL 1948, § 421.1 et seq.; § 727.1 et seq.).

8. UNEMPLOYMENT COMPENSATION—JUDICIAL REVIEW.

The specific procedure provided for the administration of the unemployment compensation act and the limited judicial review thereof is exclusive of any and all other possible methods of review (CL 1948, § 421.1 et seq.).

9. STATUTES—IN PARI MATERIA—JURISDICTION OF SUPERIOR COURT OF GRAND RAPIDS.

The unemployment compensation act is complete in all of its details and does not depend for its operation and effect on any implied grant of jurisdiction to the superior court of Grand Rapids, the early statute creating the court and the later statute creating the commission not being in pari materia (CL 1948, § 421.1 et seq.; § 727.1 et seq.).

10. SAME — CONSTRUCTION — INTENT — ENACTMENT AT DIFFERENT TIMES.

A later act which was intended to be complete in itself and bear no relation to any previous statute cannot be controlled by the former act unless such intent is clearly expressed or, at least, their close relation is made apparent by the employment of similar phraseology.

11. COURTS—SUPERIOR COURT OF GRAND RAPIDS—REVIEW OF ACTION OF ADMINISTRATIVE BODY.

A proceeding for the review of the action taken by an administrative tribunal, such as the unemployment compensation commission, has no reference to the specific powers granted to the superior court of Grand Rapids and in connection with which powers the court is authorized to issue appropriate writs and process (CL 1948, §§ 421.38, 727.13).

12. Appeal and Error—Questions Reviewable—Jurisdiction of Action of Court Reviewed.

  A discussion by the Supreme Court of issues relative to the merits of a controversy between the claimant-plaintiffs and the unemployment compensation commission, on the one side, and the employer, on the other, is neither required nor proper, where the court whose action was sought to be reviewed did not have jurisdiction to review the action of the commission (CL 1948, §§ 421.38, 727.13).

13. Costs—Public Question—Construction of Statutes.

  No costs are allowed in proceeding to determine whether or not the superior court of Grand Rapids has jurisdiction to review action of the unemployment compensation commission, where an interpretation of the statutes is involved and matters at issue are of public interest (CL 1948, § 421.1 *et seq.;* § 727.1 *et seq.*).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 6, 1953. (Docket No. 25, Calendar No. 45,659.) Decided April 13, 1953.

Certiorari by Phillis J. Mooney and others against Unemployment Compensation Commission and Western Union Telegraph Company to review decision of Appeal Board. Decision reversed. Western Union Telegraph Company appeals. Reversed and remanded with instructions to dismiss.

*Gerald M. Henry* (*Dorr Kuizema,* of counsel), for plaintiffs.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Arthur W. Brown,* Assistant Attorney General, for defendant Unemployment Compensation Commission.

*Earl Waring Dunn,* for defendant Western Union Telegraph Company.

CARR, J.   Prior to the 10th of March, 1949, the plaintiffs herein were employees of the defendant Western Union Telegraph Company.   For the purposes of collective bargaining with their employer they were represented by the Commercial Telegraphers Union, an affiliate of the American Federation of Labor.   For some time prior to 1949 the company had been contemplating the making of changes in operating methods, the natural result of which would be a reduction in personnel.   By contract between the company and the union certain provisions were made for the benefit and protection of plaintiffs and other employees in the event that the company, because of the putting of the contemplated changes into effect, should become unable to provide work for them, or any of them.

The contract as drawn provided specifically for discussions with the union in advance of any displacement of personnel, for the purpose of determining the application of the contract provisions.   It also set forth that any employee whose employment was terminated should have the option to take advantage of any one of the following provisions:

"1. Acceptance of pension if eligible.

"2. Acceptance of severance pay as hereinbelow outlined.

"3. Acceptance of transfer to another office or major department as hereinbelow outlined.   The offices in which this option is to be exercised shall be a subject for negotiation during the 60-day period mentioned above, at the division level for transfers within the division and at the national level for interdivision transfers.

"4. Acceptance of work in a lower class of work.

"5. A force reduction furlough as hereinbelow outlined."

On the date above mentioned the employment of the plaintiffs, because of the changes made by the

·company, was terminated. Thereupon they several-
ly elected to accept, in accordance with the provi-
sions of the contract, the severance pay to which
·they were entitled. Each received the amount due
by way of such pay. Shortly thereafter plaintiffs
made application for unemployment compensation
benefits in accordance with the statute (PA 1936
[Ex Sess], No 1, as amended [CL 1948, § 421.1 *et seq.*
(Stat Ann 1950 Rev § 17.501 *et seq.*)]).*

The employment compensation commission deter-
mined that the plaintiffs were entitled to compensa-
tion. The order made was appealed to a referee
who, after a hearing, upheld the commission's action.
Appeal was then taken to the appeal board of the
Michigan unemployment compensation commission
which reversed the decision of the referee and held
that plaintiffs were not eligible under the statute to
receive compensation. A motion for a rehearing
was made and denied. Thereafter plaintiffs peti-
tioned the superior court of Grand Rapids to issue
a writ of certiorari to review the determination of
the appeal board, and such writ was granted.

The Western Union Telegraph Company entered
a special appearance in the case and moved to dis-
miss on the ground that the court was without juris-
diction to hear and determine the matter, which
motion was denied. The company by appropriate
motion also raised the question that service of the
writ of certiorari had not been made on it within the
time specified by the order therefor. This motion
was also denied, the court granting plaintiffs' re-
quest for an extension of time within which to make
such service. Thereafter the matter was heard on
the merits and judgment was entered in plaintiffs'
favor, setting aside the order of the appeal board
and reinstating the order of the commission allow-

---

* The amendment to the statute made by PA 1949, No 282, has no
bearing on the instant case.

ing unemployment compensation. From such judgment the Western Union Telegraph Company has appealed, claiming that the trial court was in error in denying the motions to dismiss and in holding that the acceptance of severance pay in accordance with the contract did not render plaintiffs ineligible for unemployment compensation under the statute.

Section 38 of the unemployment compensation act (CL 1948, § 421.38 [Stat Ann 1950 Rev § 17.540]) makes provision for review of the action of the appeal board in cases of this character. Said section reads as follows:

"Sec. 38. * * * The findings of fact made by the appeal board acting within its powers if supported by the great weight of the evidence, shall, in the absence of fraud, be conclusive, but the circuit court of the county, in which the claimant resides or in which the employer's principal place of business in Michigan is located, if no claimant is a party to the case, or the circuit court for the county of Ingham shall have power to review questions of fact and law on the record made before the referee and the appeal board involved in any such final decision, but said court may reverse such decision of said appeal board upon a question of fact only if it finds that said decision of the appeal board is contrary to the great weight of the evidence: Provided, That application is made within 15 days after delivery of a copy of such decision, by certiorari or by any other method permissible under the rules and practices of the circuit courts of this State, and to make such further orders in respect thereto as justice may require. The commission shall be deemed to be a party to any judicial action involving any such decision. An appeal may be had from the decision of said circuit court in the same manner as provided by the laws of this State with respect to appeals from circuit courts."

. It will be noted that the statute makes no mention of the superior court of Grand Rapids. It is claimed by plaintiffs, however, and also by the appellee commission that said court has jurisdiction by virtue of the provisions of the act creating it and defining its powers and duties.* The said court was created by the legislature in accordance with specific authority granted therefor by article 6, § 1, of the Constitution of 1850. Its jurisdiction was expressly defined by section 13 of the Act of 1875 which, as last amended by PA 1881, No 113 (CL 1948, § 727.13 [Stat Ann § 27.3623]), reads, in part, as follows:

"Sec. 13. The said superior court shall have original jurisdiction, concurrent with the circuit court for the county of Kent, in all civil actions of a transitory nature, when the debt or damage claimed is over 100 dollars, in which both parties reside in the city of Grand Rapids; or in which either the plaintiff or the defendant resides in the city of Grand Rapids, and service of a copy of the declaration or process by which suit is begun shall be had within said city; or in which the plaintiffs, or 1 of them, if there be more than 1, reside in said city, and the defendants, or 1 of them, if there be more than 1, shall be served with a copy of the declaration, or with process in said city; or in which the defendants, or 1 of them, if there be more than 1, reside in said city, and are served with a copy of the declaration, or with process in said city. Said court shall also have such jurisdiction of all actions of trespass upon lands situate in the city of Grand Rapids; of all actions of ejectment for lands situate in said city; of suits begun by writ of attachment against nonresidents, if the property attached is in the corporate limits of said city when the writ is sued out; of all equity suits in which both parties are residents of said city, or in which either party is a resident of

---

* PA 1875, No 49, as amended (CL 1948, § 727.1 *et seq.* [Stat Ann and Stat Ann 1949 Cum Supp § 27.3611 *et seq.*]).

said city, or in which any complainant or defendant shall be a resident of said city, or in which the subject matter of such suit is situate in said city; of all foreclosure suits upon land situate in said city. And said superior court shall have exclusive jurisdiction of all actions of a civil nature at law or in equity, which may be brought by or against the board of education of said city, or by or against the said city or any of its officers; and shall have exclusive appellate jurisdiction, where appeals may be made, of all cases originally commenced and prosecuted in the police court of Grand Rapids, where a final judgment shall be rendered by police court in cases arising out of the breach of any provision of the charter or ordinances of said city; and exclusive original jurisdiction to issue writs of certiorari in such cases tried and determined in said police court, and determine the same, when it may be lawfully done. All the jurisdiction conferred upon a recorder's court of the said city, in and by title VI and VII of the revised charter of the said city, and the acts amendatory thereto, is transferred to and vested in the said superior court. Said superior court shall also have original and exclusive jurisdiction of all prosecutions and proceedings in behalf of the people of this State, for all crimes, misdemeanors and offenses arising under the laws of this State, and committed within the corporate limits of the city of Grand Rapids, except in cases exclusively cognizable by the police court, or the justices of the peace of said city, and shall have power to issue all lawful writs and process, and to do all lawful acts which may be necessary and proper to carry into complete effect the powers and jurisdiction given by this act, and especially to issue all writs and process, and to do all acts which the circuit courts of this State, within their respective jurisdictions, may in like cases issue and do by the laws of this State."

Plaintiffs and appellee commission rely particularly on the grant of original jurisdiction, concurrent with the circuit court for the county of Kent, in actions of a transitory nature when the debt or damage claimed is over $100, subject to the expressed requirements as to residence of the parties and service of process. The reference to "debt or damage claimed" obviously suggests that the legislature did not have in mind a proceeding of the character here involved, the review of an order of an administrative board. The subsequent provision relating to the issuance of writs must be construed as having reference to the jurisdiction expressly granted. It is significant that the legislature, in creating the superior court, did not invest it with all the powers and functions of a circuit court within the territorial limits of its jurisdiction. The particular classes of cases that it might hear and determine were specifically named.

In *Dunham* v. *Tilma,* 191 Mich 688, it was contended on behalf of the plaintiff that the legislature in providing for the superior court of Grand Rapids had not actually created a new court but had merely made a division and continuation of the circuit court of Kent county, carving out jurisdiction therefrom on a territorial basis. In rejecting the claim advanced, it was said in part:

"But this is not a correct assumption. The creation of the superior court was not a division of the territorial limits of the Kent circuit court, and the establishment of a new circuit court in the city of Grand Rapids. If that were the case, the superior court would necessarily, and without any grant of the legislature, possess all of the powers guaranteed by the Constitution to circuit courts, inasmuch as those powers are beyond the reach of the legislature. Section 10, article 7, of the present Constitution provides:

" 'Circuit courts shall have original jurisdiction in all matters civil and criminal not excepted in this Constitution and not prohibited by law, and appellate jurisdiction from all inferior courts and tribunals and a supervisory control of the same. They shall also have power to issue writs of habeas corpus, mandamus, injunctions, quo warranto and certiorari and to hear and determine the same; and to issue such other writs as may be necessary to carry into effect their orders, judgments and decrees and give them general control over inferior courts and tribunals within their respective jurisdictions, and in all such other cases and matters as the Supreme Court shall by rule prescribe.'

"This leaves to the legislature the right only to determine what causes may be instituted in the circuit courts. It permits to the legislature no control over the general powers of those courts. *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich 274 (5 LRA 226, 13 Am St Rep 438); *Nichols* v. *Judge of Superior Court of Grand Rapids,* 130 Mich 187. The corresponding section of the old Constitution differed in substance but slightly from the present one. This is not the case with municipal courts. They are not created by the Constitution, but only authorized and permitted. They derive all of their powers from the legislature. *Nichols* v. *Judge of Superior Court of Grand Rapids, supra.* And the legislature may give them large or limited powers. In either case they are still municipal courts, and belong to that classification. They are not courts of 'general jurisdiction,' in the sense in which that term is applied to circuit courts. Their nature is defined, and the source of their power is stated, in *People, ex rel. Covell,* v. *Treasurer of Kent County,* 36 Mich 332, where this Court said:

" 'The Court also think that under the Constitution it was competent to establish the superior court. The Constitution, it is true, declares that "the judicial power is vested in one Supreme Court, in circuit courts, in probate courts and in justices of the

peace." But it also in the same section declares that "municipal courts of civil and criminal jurisdiction may be established by the legislature in cities." Article 6, § 1.* This is a plain reservation to the legislature of the power to carve out of the judicial power vested in the other courts named such authority as it would be proper to confer upon city courts, and to create such courts for its exercise. Where that is done, the legislature must determine the extent of the authority to be given the municipal courts, subject to the restriction that it must not exceed that which can properly pertain to a municipal court.'

"While this is not the only distinction that might be pointed out between circuit courts and municipal courts, it is fundamental and sufficient. The superior court of Grand Rapids was professedly organized as a municipal court."

The unemployment compensation act was passed many years after the legislature created the superior court of Grand Rapids and defined its powers. Provision was made by the later act for the means and methods of carrying out the purpose sought to be accomplished. Remedies by way of appeal were granted for the protection of the rights of parties concerned in any such proceeding. The right of recourse to the circuit court of the county in which the claimant resides or in which the employer's principal place of business is located, if a claimant is not a party to the proceeding, or to the circuit court of Ingham county, is expressly granted. The power of a circuit court hearing such matter on review is defined and limited by the express provisions of the statute. The determination of the appeal board may not be reversed on an issue of fact unless found to be contrary to the great weight of the evidence. The jurisdiction of the Supreme Court in the premises with reference to such a controversy

---

* Const 1850.—REPORTER.

is limited to a review of the action of the circuit court. As pointed out in *Godsol* v. *Unemployment Compensation Commission,* 302 Mich 652 (142 ALR 910):

"There is no procedure by which we may review directly any decision of the administrative tribunal."

In making such statement the constitutional authority of this Court to issue original and remedial writs (Const 1908, art 7, § 4) was not overlooked. Rather, the Court recognized the fact that the legislature had provided for a specific procedure to be observed in the administration of the unemployment compensation act and for a limited judicial review, and that such provision is exclusive of any and all other possible methods of review. Such limitation was recognized in *Copper Range Company* v. *Unemployment Compensation Commission,* 320 Mich 460, 468, where it was said:

"The scope of the review of questions of fact and law by the circuit court of Ingham county, and on appeal therefrom by this Court, is limited by the provisions of section 38 of the act, as amended by PA 1941, No 364 (CLS 1945, § 8485-78, Stat Ann 1947 Cum Supp § 17.540)."

The argument advanced on behalf of the plaintiffs and of the compensation commission is in substance predicated on the theory that in the enactment of the unemployment compensation act, and in defining the jurisdiction of the circuit court to review the action of the appeal board, the legislature impliedly added to the jurisdiction of the superior court of Grand Rapids and in legal effect granted to it the same measure of authority, subject to territorial limitations of jurisdiction, that was given to circuit courts. In view of the nature of the superior court, however, the purposes for which it was created, and the enumerated powers conferred

on it, we do not think that such inference or implication is permissible. The compensation act created new rights and a specific method to be followed in obtaining and protecting those rights. Had the legislature intended to grant to the superior court the authority and jurisdiction now claimed for it, we think that, in keeping with the specific nature of other provisions of the act, such intent would have been stated. This is not a situation in which the statute providing for unemployment compensation in certain cases and the earlier act creating the superior court of Grand Rapids may be regarded as *in pari materia.* The later statute is complete in all its details. It does not depend for its operation and effect on any implied grant of jurisdiction to said court.

In *People* v. *Kupusinac,* 261 Mich. 398, the claim that an act of 1923 relating to itinerant vendors and hawkers of drugs and toilet preparations should be construed and enforced with reference to the provisions of the general hawkers and peddlers act which had been in force for many years was rejected. In holding that the later enactment was complete and bore no relation to the prior general act, it was said:

"Were there anything ambiguous or obscure about the law which defendant is charged with violating, his argument of *pari materia* might possibly be considered. However, CL 1929, § 9704 *et seq.* apply solely to itinerant or traveling vendors or hawkers of drugs, et cetera, and provide (section 9709) that any persons licensed under the provisions of the act shall not be required to obtain a State license under the prior act (CL 1929, § 9659 *et seq., supra*). It is apparent that the later act was intended to be complete in itself, bearing no relation to any previous statute. It cannot be controlled by the former act unless such intent is clearly expressed or, at least, their close relation made apparent by the employ-

ment of similar phraseology. *People, ex rel. Chapoton,* v. *Common Council of City of Detroit,* 38 Mich 636; *People* v. *Blair,* 192 Mich 183. It is clear that the later act under which defendant was convicted stands alone and is not affected by the provisions of any other act."

An analogous situation is presented in the instant case. There is nothing in the later statute suggesting a legislative purpose that in the administration of the law the judicial functions granted to circuit courts should be considered as likewise granted to the superior court of Grand Rapids, nor may we read into the statute any provision adding to or enlarging the jurisdiction of that court. Furthermore, it may be said, as before indicated, that the provisions of the statute creating said court and defining its powers and duties may not be construed as granting to it jurisdiction of the general nature here involved. A proceeding of this character has no reference to the specific powers granted to the superior court and in connection with which it is authorized to issue appropriate writs and process.

Counsel for plaintiffs and for the commission have called attention to *Attorney General, ex rel. Danhof,* v. *Renihan,* 184 Mich 272. The question at issue in that case was whether the Governor of the State or the common council of the city had the right to fill a vacancy in the office of judge of the superior court. It was held that said court being a court of record the right to make the appointment was vested by the Constitution in the Governor. In *Youdan* v. *Kelley,* 267 Mich 616, the jurisdiction of the superior court in a replevin action was sustained. We do not think that either of these decisions may be regarded as sustaining the claim of the plaintiffs and of the compensation commission in the instant controversy.

For the reasons above considered, we think that the trial court was in error in denying the motion

to dismiss the writ of certiorari. It did not have jurisdiction to review the order of the appeal board under the unemployment compensation act. In view of such conclusion a discussion of other issues raised by counsel in their briefs, relating to the merits of the controversy, is not required nor would it be proper.

The case is remanded with directions to set aside the judgment entered, and to dismiss the proceeding. Inasmuch as the interpretation of statutes of the State is involved, and the matters at issue are of public interest, no costs are allowed.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.