### GENERAL MOTORS CORPORATION v. EMPLOYMENT SECURITY COMMISSION

1. UNEMPLOYMENT COMPENSATION—CERTIORARI—REHEARING.

   Motion to dismiss a petition for writ of certiorari which was not filed within 15 days of notification of Employment Security Commission Appeal Board's decision as required by statute was properly denied where plaintiff timely petitioned for rehearing and timely petitioned for certiorari after denial of rehearing (CLS 1961, §§ 421.34, 421.38).

2. UNEMPLOYMENT COMPENSATION — LABOR DISPUTE — ESTABLISHMENT.

   No labor dispute existed in an establishment in which unemployment compensation claimants were last employed where strikes over local issues at a supplying division of General Motors Corporation caused shutdowns at claimants' employing establishment, an automobile manufacturing division of the same corporation (CLS 1961, § 421.29).

3. UNEMPLOYMENT COMPENSATION—PURPOSE.

   The employment security act was intended primarily for the benefit of those involuntarily unemployed, in other words, those who, capable of working, are prevented from doing so other than by the results of their own acts (CLS 1961, § 421.1 et seq.).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 46 et seq.

[2–4] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 36.

Construction and application of provisions of unemployment compensation or social security acts regarding disqualification for benefits because of labor disputes or strikes.   28 ALR2d 287.

4. Unemployment Compensation—Assigned Employees—Employing Unit.

> Paint and body repair men hired and paid by Fisher Body Division of General Motors Corporation but permanently assigned to Cadillac Motor Car Division of the same corporation were Cadillac employees within the meaning of the employment security act so that a strike in the Fisher Body Division which caused shutdown of the Cadillac Division did not cause disqualification of other Cadillac employees for employment security benefits (CLS 1961, § 421.29[1] [b] [4]).

Appeal from Ingham, Marvin J. Salmon, J. Submitted Division 2 November 5, 1969, at Detroit. (Docket Nos. 5,956, 5,957.) Decided December 3, 1969.

Certiorari by General Motors Corporation, a Delaware corporation, against Employment Security Commission, Stanley Flowers, Francis Litak, and others to review decisions of the Employment Security Commission Appeal Board granting unemployment benefits to Stanley Flowers and others. Affirmed. Plaintiff appeals. Defendants Stanley Flowers, Francis Litak, and others cross-appeal. Affirmed.

*K. Douglas Mann* (*Ross L. Malone,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for Employment Security Commission.

*Zwerdling, Miller, Klimist & Maurer,* for claimants.

Before: Lesinski, C. J., and Holbrook and Quinn, JJ.

Quinn, J.   Plaintiff appeals a circuit court judgment which affirmed a determination by the appeal board of the Employment Security Commission that defendant-claimants were entitled to unemployment compensation benefits.   Defendant-claimants cross-appeal on a jurisdictional issue which we treat first.

December 29, 1961, the appeal board mailed its decision to the parties.   Monday, January 15, 1962, plaintiff filed a petition for rehearing which was denied by the appeal board January 19, 1962.   Monday, February 5, 1962, plaintiff filed a petition for a writ of certiorari in circuit court and the writ was granted.   Defendant-claimants moved to dismiss the petition, set aside the order allowing the writ and to quash the writ because the petition was not filed within 15 days of notification of the appeal board's decision as required by MCLA § 421.38 (Stat Ann 1960 Rev § 17.540).   Denial of this motion constitutes the ground for the cross-appeal.

It is defendant-claimants' position that because plaintiff's original petition for certiorari only requested review of the December 29, 1961 decision of the appeal board and the petition was filed February 5, 1962, the circuit court lacked jurisdiction.   In support of this position, they cite *Peplinski* v. *Employment Security Commission* (1960), 359 Mich 665, and *Mooney* v. *Unemployment Compensation Commission* (1953), 336 Mich 344.

In both of these cases, the Supreme Court held that in order to obtain the limited judicial review provided in the statute, the statutorily specified procedure in specified courts had to be followed. In each case, the petition for certiorari was filed in a court not specified in the statute.

This is not the case before us.   Here plaintiff timely[*] petitioned for rehearing, a procedure pro-

---

[*] The statutory limitation of 15 days within which to petition

vided by CLS 1961, § 421.34 (Stat Ann 1960 Rev § 17.536), and plaintiff timely* petitioned for certiorari after denial of rehearing. We affirm the trial court's denial of the motion to dismiss.

As in *Apperley* v. *General Motors Corporation* (1969), 20 Mich App 374, the facts are not in dispute. Unlike *Apperley,* the strikes which caused defendant-claimants' unemployment occurred prior to the 1963 amendment of CL 1948, § 421.29, which deals with disqualification for benefits. Like *Apperley,* the claimants were employees of a plant closed by a strike in another plant.

All claimants were employed by and worked at Cadillac Motor Car Division of plaintiff. They were all members of local union no. 22. In October of 1958 and again in April of 1960, the Cadillac plants where claimants worked were closed and claimants were sent home by the management. The shutdowns at Cadillac were caused by strikes over local issues at Fisher Body Division's Cadillac Fleetwood plant, which supplied parts and bodies to Cadillac. The employees of Fleetwood were members of local union no. 15.

Paint and body repairmen (not claimants) employed by Fleetwood were permanently assigned to Cadillac at the front of the final car assembly line, doing repair and touch-up work before the bodies were fed into the line. These employees were members of the Fleetwood local union and they did not report for work at Cadillac while Fleetwood was on strike. On these facts, plaintiff contends claimants were disqualified under CLS 1961, § 421.29(1)(b)(4) (Stat Ann 1960 Rev § 17.531[1][b][4]).

---

for rehearing and to seek review in circuit court expired on a Saturday. MCLA § 421.49 (Stat Ann 1968 Rev § 17.553[1]) extends the 15-day limitation in such a case to the next day that is neither a Saturday, Sunday nor legal holiday.

The pertinent part of CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531) reads:

"(1) An individual shall be disqualified for benefits:

(b) For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed: Provided, however, That no individual shall be disqualified under this section if he shall establish that he is not directly involved in such dispute. For the purpose of this section, no individual shall be deemed to be directly involved in a labor dispute unless it is established:

(1) That, at the time or in the course of a labor dispute in the establishment in which he was then employed, he shall in concert with 1 or more other employees have voluntarily stopped working other than at the direction of his employing unit, or

(2) That he is participating in or financing or directly interested in the labor dispute which caused the stoppage of work: Provided, however, That the payment of regular union dues shall not be construed as financing a labor dispute within the meaning of this subsection, or

(3) That at any time, there being no labor dispute in the establishment or department in which he was employed, he shall have voluntarily stopped working, other than at the direction of his employing unit, in sympathy with employees in some other establishment or department in which labor dispute was then in progress, or

(4) That at any time, there being no labor dispute in the particular department or unit in which he was then employed, or there being no labor dispute among the grade or class of workers within the employing unit to which he belongs, he shall have become unemployed because of a stoppage of work in his particular department or unit, or among the grade or class of workers to which he belongs, which stoppage

of work is due to a labor dispute which was or is in progress in some other department or unit or among a different grade or class of workers of the same employing unit by whom he was then employed."

Under *Park* v. *Employment Security Commission* (1959), 355 Mich 103, and *Northwest Airlines, Inc.,* v. *Employment Security Commission* (1966), 378 Mich 119, there was no labor dispute in the establishment in which claimants were last employed. Claimants worked in a distinct physical place of business in which there was no labor dispute during the period for which unemployment benefits were allowed below.

The purpose of the employment security act is well expressed in *I. M. Dach Underwear Company* v. *Employment Security Commission* (1956), 347 Mich 465, where it is said at p 472:

"It thus appears that, in the interest of the public welfare, the legislature of the state undertook to deal with the problem of involuntary unemployment. The declaration of policy is significant in the interpretation of the various provisions of the statute through which the ultimate result sought was to be attained. Clearly the act was intended primarily for the benefit of those involuntarily unemployed, in other words, those who, capable of working, are prevented from doing so other than by the results of their own acts."

We must read the act in the light of that purpose, *I. M. Dach Underwear Company, supra.*

Fleetwood employees assigned to Cadillac were employed by Fleetwood only in the sense of being hired, paid, etc. They were employed in the sense of doing what they were hired to do and paid for doing by Cadillac. Employed in the latter sense is more consonant with *Dach* than the former, and we

conclude that the paint and body repairmen from Fleetwood were Cadillac employees within the meaning of the employment security act and that there was no disqualification under CLS 1961, § 421.29 (1)(b)(4) (Stat Ann 1960 Rev § 17.531[1][b][4]). The stoppage of work at Cadillac was not due to a labor dispute in some other department or unit of Cadillac nor was it due to a labor dispute among a different grade or class of workers at Cadillac. The stoppage of work at Cadillac was due to the strike at Fleetwood.

The question of scope of review by the circuit court as posed by plaintiff has been answered by *Apperley, supra*

Affirmed with costs to claimants.

All concurred.